UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CHARLES E. GUILLORY and HOWARD DESSELLES | CIVIL ACTION NO. 1:10-CV-01724 |
| VS. | JUDGE DEE DRELL |
| AVOYELLES PARISH SCHOOL BOARD | MAGISTRATE JAMES KIRK |

✱    ✱    ✱    ✱    ✱    ✱

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION NO. 1:65-CV-12721 |
| VS. | JUDGE DEE DRELL |
| AVOYELLES PARISH SCHOOL BOARD | MAGISTRATE JAMES KIRK |

### MEMORANDUM ON BEHALF OF THE AVOYELLES PARISH SCHOOL BOARD

**MAY IT PLEASE THE COURT**:

      This case emanates from the adoption by the Avoyelles Parish School Board of a redistricting plan on May 21, 2002 that reduced the number of School Board Members from 13 to 9. On February 14, 2003, Charles Guillory, Howard Desselles and others filed suit against the Avoyelles Parish School Board, it's superintendent and 13 School Board Members in civil action CV03-0285-A of the United States District Court, Western District of Louisiana, Alexandria Division, claiming that the redistricting plan diluted the minority voting strength in violation of the 1965 Voting Rights Act and the Fifteenth Amendment to the United States Constitution and a

denial of equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution.

On July 17, 2006 the attorneys for the plaintiffs and the Avoyelles Parish School Board, along with the party's redistricting experts, met and agreed upon a compromise 9 member plan which incorporated 3 majority/minority districts.  On July 18, 2006 the plaintiffs and defendants informed the Honorable Dee Drell that a compromise had been reached and the latter opened Court and allowed plaintiffs' counsel and defendants' counsel to put the compromise agreement on the record.  The parties agreed pursuant to a directive from the Court that plaintiffs' demographer, Glenn Koepp, and defendants' demographer, Heather Urena, would devise a 9 member Avoyelles Parish School Board Plan with 3 majority minority districts to be submitted for adoption by the Avoyelles Parish School Board at it's August 1, 2006 meeting. The Avoyelles Parish School Board adopted the new redistricting plan on August 1, 2006 by Resolution with an 8 to 1 vote.

The facts set forth above are taken directly from the Consent Judgment approved by this Court on August 2, 2006 in civil action CV03-0285-A described above (Document 41) (hereinafter Consent Judgment).

While Lizzie Ned was in District 6 under the redistricting plan adopted by the Avoyelles Parish School Board on May 21, 2002, the redistricting plan adopted in the Consent Judgment and approved by this Court placed her in District 4 (see Annex A & Annex C of Document 41, page 9 of 9, Notice of Manual Attachment).

As plaintiffs' pleadings reflect, Lizzie Ned ran in District 6 after the Consent Judgment and was elected and served for 4 years as District 6 School Board Member.  While still residing

2

in District 4, Lizzie Ned ran for re-election and won in District 6 for the Avoyelles Parish School Board in 2010 with her new term beginning in January 2011.  Two written complaints were thereafter filed by registered voters of District 6 with the District Attorney's Office challenging whether Lizzie Ned met the residency requirements to represent School Board District 6.  Pursuant to the provisions of La. R.S. 18:671, et seq, the District Attorney commenced an investigation, issued a written opinion and filed a Declaratory Action on November 8, 2010 in the 12th Judicial District Court, Parish of Avoyelles, State of Louisiana, requesting that there by Judgment declaring the Avoyelles Parish School Board District 6 seat vacant, and ordering the vacancy to be filled as provided by law.

Trial on the Declaratory Action was held on November 30, 2010 and on December 14, 2010 judgment was rendered declaring the office of the Avoyelles Parish School Board member, District 6 vacant and ordering that the vacancy be filed as provided by law (see Exhibits "A" and "B" attached to Answers of Avoyelles Parish School Board, et al, Document 7-1, 7-2 and 114-1, 114-2).  The delay for appeal from the Judgment of the 12th Judicial District Court, Parish of Avoyelles, State of Louisiana, has expired pursuant to La. R.S. 18:674, and said Judgment is now final.

## LAW AND ARGUMENT

A plaintiff must plead enough facts to state a claim to relief that is plausible on its face.  **Bell Atl. Corp. v. Twombly,** 550 U.S. 554, 570, (2007).  However, if the assertions made within the complaint, even if true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at a point of minimum expenditure of time and money by the parties and the

court. ***Cuvillier v. Taylor,*** 503 F.3d 397, 401 (5th Cir. 2007). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all of the allegations in the complaint are true (even if very doubtful in fact).

It should be initially noted that neither the "political hierarchy" nor the District Attorney's Office for the 12th Judicial District are parties to this suit. It should also be noted that even Lizzie Ned, the supposed victim of a "conniving and diabolical" scheme, is not a party plaintiff herein and in fact is a defendant, in her official capacity of a School Board Member. It is quite difficult to defend against the figments of the plaintiffs' imagination, however, it was made clear from the Declaratory Action in State Court and the hearing before this Honorable Court on December 27, 2010, that plaintiffs utterly failed to present one scintilla of evidence that would support their slanderous and obnoxious allegations. Indeed, the testimony of Leroy Daniels, a registered African American voter in District 6 who challenged Lizzie Ned's residency status, clearly showed that the reasoning behind his challenge had everything to do with the shameful and unsupported allegations made by Allen Holmes against the first challenger, Sandra Young Campbell, and nothing to do with any sort of scheme based upon racial animus.

The Consent Judgment was approved by plaintiffs, Charles E. Guillory, Howard Desselles, et al, this Honorable Court, the Voting Rights Section of the United States Department of Justice and the Avoyelles Parish School Board, the latter of whom included aye votes from African American board members Freeman Ford and Eva Williams. The goal of the parties plaintiff and the government was to create three majority/minority districts out of a total of nine districts and said goal was reached by the Consent Judgment. It was neither mistake nor artifice

to use the visible boundaries of Hickory Street, North Sycamore Street, Palmetto Street, **North Cottonwood Street**, Frazier Street and East Oak Street as a boundary between District 6 and District 4.

It was neither by mistake nor artifice that the Consent Judgment placed Ms. Lizzie Ned, who was not on anyone's radar screen, in District 4.

Paragraph 14 of the Consent Judgment states in no uncertain terms that:

"The plaintiffs agree that this document contains all considerations for the full release, compromise and settlement of all causes of action arising against defendants for their alleged violation of the Voting Rights Act of 1965, Fourteenth and Fifteenth Amendments to the United States Constitution emanating from a redistricting plan adopted by the Avoyelles Parish School Board on May 21, 2002."

Plaintiffs' actions herein should therefore be barred by said compromise and settlement and under the theory of *Res Judicata*.

The only State action that is a basis of plaintiffs' complaint is an **error** made by the former Registrar of Voters for the Parish of Avoyelles in attempting to implement the Consent Judgment which contained no error or artifice. The former registrar failed to recognize that the City of Bunkie did not follow the 911 emergency system whose format was utilized by the Statewide ERIN system for the Registrar of Voters offices. This failure to recognize and adjust caused the ERIN system to erroneously place even and odd numbered addresses along the streets mentioned above on the opposite side of the street. The current Registrar of Voters, Gloria Moreau, learned of the error during early voting in September of 2010 and rectified same after the thirty day lock down period ended in October of 2010. All voters were, however, allowed to vote. Notably, the Registrar of Voters for the Parish of Avoyelles is not a party to these

proceedings and defendants have no authority over said office.

The first obvious jurisdictional question in this case concerns the plaintiffs themselves, who have no standing in this matter. In *U.S. v. Hays,* 515 U.S. 737, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), the Court noted that the question of standing is not subject to waiver and that the Federal Courts are under an independent obligation to examine their own jurisdiction; and that standing is perhaps the most important of the Jurisdictional Doctrines (page 2432). In the present case, neither Intervenor Allen Holmes nor plaintiffs Charles Guillory or Howard Desselles have even alleged that they are residents of District 6 which they desire this Court to redraw to their likings.

In *U.S. v. Hays*, supra, the Court went on to state that:

> It is by now well settled that "the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.....Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (footnote, citations, and internal quotation marks ommitted); see also, *e.g. Allen v. Wright,* 468 U.S. 737, 751,104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In light of these principles, we have repeatedly refused to recognize a generalized grievance against allegedly illegal governmental conduct as sufficient for standing to invoke the federal judicial power. See, *e.g. Valley Forge Christian College,* supra; *Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974); *Ex parte Levitt,* 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937) (per curiam). We have also made clear that "it is the burden of the 'party who seeks the exercise of jurisdiction in his favor,' *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936), 'clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.' *Warth v. Seldin,* 422 U.S. 490, 518, [95 S.Ct.

2197, 2215, 45 L.Ed.2d 343] (1975)." ***FW/PBS,*** supra, at 231, 110 S.Ct., at 607-608. Allen Holmes, Charles Guillory and Howard Desselles suffered no "injury in fact" and certainly, there is no evidence to suggest that the named defendants (Avoyelles Parish School Board, the Superintendent and it's elected members) had anything to do with Lizzie Ned's unfortunate circumstances, much less the rantings of the complainants. Allen Holmes, Charles Guillory and Howard Desselles have no standing and their claims should be dismissed with prejudice.

The Avoyelles Parish School Board is a political subdivision of the State of Louisiana created by the State Constitution, with powers, duties and obligations defined by statute. See La. Const. Art. 8 § § 9 and 10, ***Rousselle v. Plaquemines Parish School Board,*** 633 So.2d 1235 (La. 1994). A school board acts pursuant to public meetings where it's members vote on any given matter, including reapportionment. To suggest, as plaintiffs do, that some unnamed board member acted in concert with some unknown political hierarchy, and with zero evidence in support thereof, is merely speculation at best.

The only authority the School Board has that is in anyway related to this case is to reapportion it's member districts. La. R.S. 17:71.1, et seq. Section 71.1 states in part that "Any reapportionment shall be based upon the latest federal decennial census, or a special census as authorized by 17:71.3(A)...". To become effective, the School Board must submit it's reapportionment plan to the U.S. Department of Justice under the Voting Rights Act of 1965, see La. R.S. 17:71.5. To change the School Board Member district lines at this time, as suggested by the plaintiffs, constitutes a reapportionment that is not authorized by law.

Furthermore, in view of the federal decennial census having been performed in 2010, the

School Board will be required to submit a new reapportionment plan in the near future and is surely not going to seek a special census under the circumstances and considering the cost involved. The report by the School Board's expert, Heather Urena, further reflects that modifications of current boundaries to include Lizzie Ned in District 6 would require moving two blocks containing an estimated population of 100 persons and causing a deviation from equal proportions and retrogression of one or more majority/minority districts (See Report attached hereto as Exhibit "A").

The last time the School Board acted as a public body regarding the issues presented to this Court was to approve the reapportionment plan implemented by the Consent Judgment. Subsequent to the Consent Judgment, the School Board has taken no action that could be described as an attempt to enact or administer a new voting procedure that would invoke the jurisdiction of this Court under Section Five of the Voting Rights Act, see 42 U.S.C. § 1973C and ***U. S. v. St. Landry Parish School Board,*** 601 F.2d 859 (5th Cir. 1979).

Subsequent to the Consent Judgment, the School Board has taken no action that could be described as having a purpose or effect of denying and abridging the right to vote on account of race in order to invoke the jurisdiction of this Court under 42 U.S.C. § 1971(a) or § 1973. The error made by the former Registrar of Voters and the attendant consequences of issuing voter cards with incorrect information is regrettable. The fact that Lizzie Ned ran in the wrong district, was challenged and her District 6 seat declared vacant is regrettable. However, these are all garden-variety election issues that the Constitution leaves to the State's broad power to regulate the conduct of elections. ***Duncan v. Poythress,*** 657 F.2d 691, 702 (5th Cir. 1981), and the federal

courts are neither equipped, nor empowered, to rectify every alleged election irregularity. ***Powell v. Power,*** 436 F.2d 84 (2nd Cir. 1970), ***U. S. v. St. Landry Parish School Board,*** supra.

In conclusion, Allen Holmes, Charles Guillory and Howard Desselles lack standing, and this Honorable Court lacks jurisdiction, to impose upon the Avoyelles Parish School Board and it's representatives the remedy prayed for in their complaints.

**WHEREFORE,** defendants pray that the complaints be dismissed, with prejudice, at their cost.

RESPECTFULLY SUBMITTED:

OFFICE OF THE DISTRICT ATTORNEY
TWELFTH JUDICIAL DISTRICT

BY:  /S/ David E. Lafargue
       CHARLES RIDDLE, III (#10974)
       DISTRICT ATTORNEY
       DAVID E. LAFARGUE (#08084)
       ASSISTANT DISTRICT ATTORNEY
       P. O. BOX 1200
       MARKSVILLE, LOUISIANA 71351
       (318) 253-6587
       ***COUNSEL FOR DEFENDANTS***

## CERTIFICATE

I hereby certify that a copy of the foregoing Memorandum has been forwarded to all counsel of record using CM/ECF system and/or, as appropriate, via facsimile and/or electronic mail and/or via U. S. Mail properly addressed and with sufficient postage on this 20th day of January, 2011.

       /s/ David E. Lafargue
       DAVID E. LAFARGUE