

EXHIBIT D

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

REPORT BY HEATHER SMOAK URENA

Prepared January 2, 2011

I, Heather Smoak Urena, make the following report:

Expertise

1. I am currently employed by, and have been employed with Kisatchie-Delta Regional Planning & Development District, Inc., hereinafter known as "Kisatchie-Delta," since August 1996. This employment includes expertise in analyzing demographics and conducting professional, technical services in relation to reapportionment/redistricting processes with local governments, requiring specialized training and experience in GIS mapping, special purpose planning, project administration, and legal submissions to the U.S. Department of Justice for Section 5 review.

2. I have been recognized as an expert on multiple occasions before the United States District Court, Western District of Louisiana, Alexandria Division.

3. I have been requested to supply this report by the Avoyelles Parish District Attorney, Charles Riddle. Subsequently, on December 29, 2010, the other party, along with Mr. Holmes, also requested that I prepare information to be used for the proceedings before the Court. No compensation is being received individually or by Kisatchie-Delta for this consultation from any agent known for any party to this matter.

## Background

1. A registered voter qualified to run for public office in a district that is adjacent to the district including her residence, 203 N. Cottonwood, Bunkie, LA, hereinafter referred to as "the point". She was elected. A challenge was proffered. I am providing information pertaining to the technical construction of election districts and precincts to assist Counsels and the Court in evaluating the matter at hand.

2. Using guidance from the Bureau of Census and State of Louisiana, Census blocks with visible boundaries are the foundation for the construction of precincts and election districts and area census tabulation areas. Blocks are the smallest enclosed Census area, normally bounded by physical, visible features. Election districts are constructed to be in equal proportions, "as nearly as is practicable", generally accepted to be within ±5% of an established ideal value. The ideal value for parish-wide elections in Avoyelles Parish is derived by subtracting the State prison population from the total population and dividing it by nine, the number of election districts at the parish level. Voting areas are to follow guidelines for construction that include compactness, contiguity, continuity, racial and/or other special-population proportion, communities of interest, and the principle of one-man, one-vote.

3. The Code of Federal Regulations, as amended, includes administrative guidelines pertaining to the conduct of reapportionment/redistricting and submission and review. Publicity and participation is especially significant for "controversial or potentially controversial changes." Submissions of changes affecting voting must be provided to Section 5 of the U.S. Department of Justice and must include the legal basis for making a change by the local governing body describing "a) the extent to which a reasonable and legitimate justification for the change exists. b) the extent to which the jurisdiction followed objective guidelines and fair and conventional procedures in adopting the change…"

4. I have performed a review of the 2000 Census geography and related demographic data to report findings relative to the matter before the Court. The information on which my preliminary findings are based is within the public domain and is issued by the United States Census Bureau through TIGER (Topologically Integrated Geographic Encoding and Referencing). These findings are general and in the perspective of pertaining to technical construction of precincts and election districts that may result from a decision for movement of the Block and/or adjacent Blocks.

Report of Findings

1. *Use of Visible Bounds.* A consideration of "moving" the point to the adjacent district would initially require two enjoined Blocks {"1008" and "1014"} to be moved, as this creates the smallest, contained area between visible boundaries; a segment of the municipal corporate limits of Bunkie, Louisiana is a non-visible line boundary between the two identified Blocks.

2. *Compactness and Continuity.* If the aforementioned enjoined Blocks were to be moved to another district, other Blocks on the south and west of the enjoined Blocks would become non-contiguous and cut off from the remaining District 4, thus compelling the movement of these Blocks with the enjoined Blocks. Subsequently, District 6 would include a "peninsula" that is socially and geographically without compactness or continuity.

3. *Deviation from Equal Proportions.* The combined Blocks referenced under Report items 1 and 2 include an estimated population of 100; 100 persons represents a ±2.25% impact to the overall deviation (maximum ±5%) of an election district {computed on an approximate, derived ideal value of 4,440 persons per election district} and creates the likelihood of excessive deviation within two of the nine districts, expected also to result in removing equality between the election districts.

4. *Deviation from One-Man, One-Vote Principle.* The combined Blocks referenced under Report items 1 and 2 include an estimated black population of 91 persons; this is likely to result in retrogression of one or more minority-majority election districts.

5. *Expense.* The reapportionment plan for the Avoyelles Parish School Board was pre-cleared by the U.S. Department of Justice Voting Rights Section following previous matters before this Court. No significant changes within the voting area have occurred to trigger an adjustment by the Avoyelles Parish School Board. As the pending decision is relative to the

election districts of the Avoyelles Parish School Board, action and responsibility, including expense of conducting such change, would burden the named public body, at minimum.

6. *Potential for Voter Confusion*.  A change made for one point but affecting a population estimated at 100 would create confusion for the other 99; the quantity of proposed persons/voters impacted also has the potential to exceed capacity of affected polling locations.

## Conclusion

Any change to an election district will necessitate expenses of time and resources to properly prepare materials, notify the public, and submit for preclearance.

I hereby declare, under penalty of law, that the above is true and correct, to the best of my knowledge, information, and belief. I do reserve the right to supplement this declaration as, and when additional review is conducted or further information is considered.

Respectfully submitted,

s/ HEATHER SMOAK URENA