RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE 1/20/11
BY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALLEN HOLMES, INTERVENOR | CIVIL NO. 1:65cv-12721 |
| VS. | JUDGE DRELL |
| AVOYELLES PARISH SCHOOL BOARD | MAGISTRATE JUDGE KIRK |
| REV. CHARLES E. GUILLORY and HOWARD DESSELLES | CIVIL NO. 03-CV-0285-A |
| vs. | JUDGE DRELL |
| AVOYELLES PARISH SCHOOL BOARD, et al | MAGISTRATE JUDGE KIRK |

PLAINTIFFS' JOINT POST HEARING MEMORANDUM

MAY IT PLEASE THE COURT

NOW INTO COURT come the plaintiffs who file this post hearing memorandum as ordered by this Honorable Court on December 27, 2010. For the reasons set forth below, this Honorable Court should grant the intervenor's wishes and move the voting district lines in accordance with the law.

### I. This Honorable Court Should Move The Lines In Accordance With The Law.

*A. The Facts Of This Case Dictate This Honorable Court Intervene In This Matter.*

At the December 27, 2010 hearing it was obvious to all who heard testimony that the current standing of one hundred plus members of the Avoyelles Parish community as it pertains to their voting rights is both confusing and unacceptable. The affected class of persons has been precluded from participating in the electoral process because of State action that should have been remediedied some time ago. This Honorable Court is well aware of the arduous nature of this litigation and for something as simple as drawing voting districts that are clear and

distinguishable to be holding up this desegregation matter is truly a travesty. There are forty to fifty persons, of which Ms. Ned is included, that cannot vote and exercise their right to be heard due to the failure of the State to ensure these persons are equally protected under the law. This Honorable Court should intervene to protect these interests.

*B. The State Has Not Corrected The Problem And Is Not Taking Steps To Correct The Problem.*

It was made clear at the hearing that parish officials knew since 1994 of the problems with the 911 system that was being used to draw voting districts and yet no one did anything to fix the problem. At no point did anyone say go back to the drawing board and fix the issue. In fact, even when the most recent elections made it clear there was a problem, State actors did nothing and argued they could not do anything to prevent the problem. Even after the election, State actors only sought to remove Ms. Ned from office, but no one as of this date has yet to propose a remedy that ensures the affected class of persons is able to vote like everyone else in the community.

It could not be any clearer to the mover, and perhaps the Court, that there is no interest in protecting the interests of the affected class of persons. The only interest has been to remove Ms. Ned. Ms. Ned's removal has taken place. What now? How do we protect the affected class? The State has offered no resolution and this Honorable Court should now do so.

*C. This Desegregation Case Potentially Faces A Tremendous Set Back Should The Court Not Intervene.*

As the Court is probably aware, the District Court's removal of Ms. Ned from office now leaves a vacancy in the District 6 School Board Position. A closer look at how this problem will

be remedied raises serious concerns about this case and threatens the progress that has been made in resolving the desegregation matter.

Pursuant to state law, the current members of the Avoyelles Parish School Board will choose Ms. Ned's replacement. This is significant as there were three African American members of the Board before Ms. Ned's removal. Now there are two. For however long it takes to conduct a new election, the people of District 6 will be represented by an individual who was not selected by the majority of the voters in that district. No other district has to face such an issue. It is truly sad because if state actors had attempted to fix the problem years ago, this issue would not even exist.

## II. The Court Has The Authority To Redraw The Lines

In the case of *Hays v. Louisiana,* the plaintiffs sued as they objected to the drawing of voting districts they viewed as racial gerrymandering. The initial plan did not receive the required clearance under the Voting Rights Act. A second plan did receive preclearance but was problematic for other reasons. When asked to approve the second plan, the District Court, which had heard evidence concerning multiple plans and have given ample opportunity allow the parties to fix any problems, overruled the second plan and chose to implement its own plan. The court did so stating that their "strong preference [was] to leave to the Legislature the task of drawing election districts. We reluctantly set our hands to the task, considering the lateness of the hour, the dismal history of the Legislature in two previous attempts... (862 F. Supp 119). While it may seem like an extreme remedy, the *Hays* court had no other choice. Like the

3

defendants in *Hays*, the State cannot be trusted to fix this issue as even as late as the December hearing, the State has not made any attempt to fix the issues.[1]

Similar action was taken by this very court in an earlier proceeding. The Court should consider the precedent set in the case of *Allen Holmes et al v. Avoyelles Parish School Board et al* (Civil Action 82-2430). In that case, Judge Scott had to consider the plaintiffs' objection to a districting plan. The plaintiffs argued that the plan that was adopted by the school board and was pre-cleared by the Justice Department violated the 14th and 15th amendment rights of African American voters in Avoyelles Parish. The plaintiffs asked the court to consider a different plan other than the plan the defendants presented to the court.

Judge Scott recognized that the legislature is normally given great deference in the drawing of districts. However, Judge Scott was not convinced that the plan was best possible plan, nor was the Judge convinced the plan was not violative of the 14th and 15th amendments. Judge Scott decided the plan would "seriously and invidiously diminish the rights of the black citizens of Avoyelles Parish and their access to the public and political process." Judge Scott ruled in the plaintiffs' favor. Furthermore, Judge Scott declared that he would follow the plan the plaintiffs presented to the court. In other words, the court changed the plan. Given the prior history of the Avoyelles Parish School Board, the authorities responsible for protecting the voters, and the impact their dealings have had on the voters of the parish, this Honorable Court should take the same measure Judge Scott did and move the lines. It is clear that the institutions in Avoyelles Parish who could have fixed this problem years ago have no intention of fixing the problem.

---

[1] It should be noted that Hays was ultimately overturned by the Supreme Court. The Court overturned the ruling due to a lack of standing, not because the Court erred in implementing its own plan.

4

### III. The Defendant's Expert Report Misses The Larger Point

The defendants offer the report of Ms. Urena to convince this Court why the current plan should stand. With all due respect to the expert, her report misses the larger issue. The defendants' expert report serves to protect a plan that if maintained, may make things easier. However, the current districting causes the very problems the expert argues the status quo prevents. First concerns the one man one vote principle. There is already a deviation from the one man one vote principle. As stated earlier, the eight members of the school board and not the citizens of the district chose the current member. Additionally, the one hundred people who are affected don't even get to have their vote heard. You cannot violate the rights of the 100 in order to achieve one man one vote. 14th and 15th amendments do not allow such actions. No matter how you characterize it, a plan that violates these rights is unacceptable regardless of what report is submitted in support of the report.

Next, the report warns about the cost of redrawing the lines. Of course, it neglects the cost of the election that will have to take place to fill Ms. Ned's seat. Finally, there is a warning about potential voter confusion. There is already voter confusion. The court heard testimony concerning such confusion. The report attempts to defend a plan that is indefensible. This Honorable Court cannot allow the miscarriage of justice that has taken place to stand.

### Conclusion

This Honorable Court has heard the evidence of the failings of the State of Louisiana to protect the 100 voters whose rights were violated and whose voice is lost. This Honorable Court should make every effort to not only remedy the problem to protect these rights, but to protect the progress that has been made in the desegregation case that is pending before this Court. This Court knows that the Avoyelles Parish School System hangs in the balance as it continues to

5

press forward towards unitary status. These recent events have been a setback to achieving unitary status. The fact that there has been no effort made to correct the problem is even more troubling because it appears that the rights of the voters of District 6 are being trampled upon to appease those who want a quick fix. But this Honorable Court can right the ship and preserve the tenuous bond that now exists. To protect the rights of the affected voters, to ensure that this problem is resolved effectively, and to preserve the Avoyelles Parish School System as it proceeds towards unitary status, the Court should redraw the lines to ensure the parties affected can vote and be heard just like any other registered voter in Avoyelles Parish.

Respectfully submitted

Edward Larvadain Jr., #8056
Malcolm Larvadain, #26,066
626 Eight Street
Alexandria, La 71301
T: 318-445-6717
F: 318-445-4030

Attorney for Plaintiffs

ALLEN HOLMES
175 Kim Rush Road
Marksville, Louisiana 71351
318-253-6239 (Home)
318-452-2391 (Cell)

Mover In Proper Person

CERTIFICATE OF SERVICE

This is to certify that on this **20** day of _____, 2011, a copy of the above and forgoing was forwarded to Mr. Charles Riddle, III, District Attorney by placing a copy of the same in the U.S. Mail, postage prepaid.

Attorney

6